IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MIKE D. COLLINS, )
 )
      Plaintiff, )
 )
v. ) Case No. CIV-15-188-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
      Defendant. )

## OPINION AND ORDER

The claimant Mike D. Collins requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born June 5, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 29, 149). He completed the eleventh grade, and has worked as a forklift operator, certified nurse's assistant, and hand packager (Tr. 21, 179). The claimant alleges inability to work since September 30, 2010, due to blindness in his right eye, right hand injury, COPD, a back injury, and emphysema (Tr. 178).

## Procedural History

On December 16, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Clifford Shilling conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 14, 2013 (Tr. 15-23). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was able to frequently climb ramps/stairs, but only occasionally climb ladders/ropes/scaffolds and

balance/stoop/kneel/crawl, and he must avoid concentrated exposure to gases, fumes, odors, dust, and poorly ventilated areas. Additionally, the ALJ found that the claimant was limited to work where interpersonal contact is incidental to the work performed; complexity of tasks was learned and performed by rote with few variables and little judgment required; and supervision is simple, direct, and concrete (Tr. 17-18). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, hand packager, garment sorter, and basket filler (Tr. 21-22).

## Review

The claimant's sole contention of error is that the ALJ failed to properly evaluate his mental impairments. The Court finds this contention unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of right eye blindness, COPD, right hand injury, and back injury, and made no further findings with regard to any nonsevere impairments (Tr. 17). At step three, the ALJ simply stated, without reference to any particular citation or analysis, that the claimant did not meet the criteria for any of the listed impairments (Tr. 17). The medical evidence relevant to the claimant's mental impairments reveals that Dr. Leslie Stone monitored his anxiety disorder and considered it stable at the time of treatment, and further noted the claimant had an appointment with a counseling center (Tr. 399-404).

The claimant sought treatment at Ozark Guidance Counseling Center, and was assessed with a mood disorder not otherwise specified and anxiety disorder not otherwise

specified, on April 5, 2012 (Tr. 414). The claimant returned once on April 26, but was discharged on July 31, 2012, for dropping out of treatment (Tr. 506-507).

On July 17, 2012, Dr. Jason Glass, Psy.D., conducted a mental diagnostic evaluation of the claimant (Tr. 472). Dr. Glass administered the WAIS-IV, found he had a full scale IQ of 71, with a verbal comprehension score of 70, a perceptual reasoning score of 77, a working memory score of 80, and a processing speed score or 76 (Tr. 474). Dr. Glass determined that the claimant had a borderline range of intelligence and his scores were consistent with his history of special education classes. He diagnosed the claimant with social phobia and major depressive disorder that was recurrent and moderate, along with borderline intellectual functioning (Tr. 475).

State reviewing physician Susan Daughtery, Ph.D., reviewed the claimant's records and determined that he was moderately limited in the ability to: (i) carry out detailed instructions, (ii) maintain attention and concentration for extended periods, (iii) sustain an ordinary routine without special supervision, (iv) complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rests, (v) accept instructions and respond appropriately to criticism from supervisors, (vi) respond appropriately to changes in the work setting, and (vii) set realistic goals or make plans independently of others (Tr. 482). She then stated that the claimant was able to perform work where interpersonal contact is incidental to work performed, such as assembly work; complexity of tasks is learned and performed by rote, with few variables

and little judgment; and supervision is simple, direct, and concrete, *i. e.*, unskilled (Tr. 482).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as the medical evidence including any evaluation related to his mental health. Specifically, the ALJ summarized the sparse mental health treatment records and Dr. Glass's diagnostic evaluation (Tr. 20). He then concluded that the claimant's mood disorders and related limitations were "not of a severity which would limit activities beyond the scope of the [RFC], as determined in this decision" (Tr. 20). As stated above, this meant that the ALJ essentially adopted the findings of Dr. Daugherty, which are consistent with the mental health treatment records available and Dr. Glass's assessment of the claimant's borderline intellectual functioning.

"Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. U.S. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To apply the special "psychological review technique" (PRT), the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), and then determine the degree of function the claimant has lost as a result of the impairment by assessing his level of functioning in four specific areas. *See Cruse*, 49 F.3d at 617. The four areas are: (i) activities of daily living; (ii) social

functioning; (iii) concentration, persistence, or pace; and (iv) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(d)(2). Furthermore, the ALJ must specifically document his PRT findings. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988). *See also* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("At the administrative law judge hearing [level], the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)"); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (although not required to prepare the PRT form, the ALJ is "to document application of the technique in the decision."), *quoting* 20 C.F.R. §§ 1520(a)(e), 416.920(e).

As discussed above, there was evidence in this case suggestive of a mental impairments, *i. e.*, diagnoses of mood disorder, depression, and anxiety. The ALJ was therefore required to determine the claimant's degree of functioning in the above-discussed broad areas and to document his findings. Here the ALJ did not even make mention of the possibility of mental impairments until step four, let alone evaluate them for severity. This is not reversible error with regard to step two, however, because the ALJ found the claimant had other severe impairments, *i. e.*, right eye blindness, COPD,

right hand injury, and back injury.  Moreover, the ALJ was also required to consider any limiting effects of the claimant's mental impairments (even if non-severe) and account for them in formulating his RFC at step four.  *See, e. g., Carpenter*, 537 F.3d at 1266 ("'At step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523.  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [quotations omitted] [emphasis in original].  Here, the ALJ did just that when he discussed all the evidence of the claimant's impairments, including his mental impairments, then incorporated that evidence into the RFC assessment.  Accordingly, although the Court would note that the ALJ should in the future ensure that he follows the requirements at each step of the evaluation process, his errors at steps two and three were harmless in this case.  *See Rose v. Colvin*, 634 Fed. Appx. 632, 636 (10th Cir. 2015)

("The ALJ's decision does not document the required technique, but we conclude the error was harmless"; finding the ALJ's assessment consistent with the opinions in the record), *citing Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**